UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

KIM WOLFE,

                Plaintiff,

- against -

THE BACHRACH GROUP, LTD., RICHARD
BACHRACH, and ANTHONY FANZO,

                Defendants.
------------------------------------------------------------------x

Civ. No.

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff Kim Wolfe, through her attorneys Vladeck, Raskin & Clark, P.C., complains of defendants The Bachrach Group, Ltd. ("TBG"), Richard Bachrach, and Anthony Fanzo, as follows:

NATURE OF ACTION

1. Wolfe performed her work for recruiting firm TBG extremely well, managing other recruiters, engaging in business development, managing accounts, recruiting, and maintaining client relationships. Wolfe brought TBG significant business, despite being denied the same opportunities provided to younger, male employees and being subjected to a hostile work environment. TBG recognized Wolfe as an excellent employee until she had the temerity to complain to management about the hostile work environment. Once she did, she was swiftly fired. When her attorneys asserted claims on her behalf, TBG tried to prevent her from obtaining unemployment benefits and refused to pay commissions she had earned.

2. Wolfe brings this action to remedy gender discrimination, including a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 <u>et seq</u>. ("Title VII"); age discrimination, including a hostile work

#1025536

environment, and retaliation in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); and sex and age discrimination, including a hostile work environment, and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Admin. Code, § 8–101 et seq. ("NYCHRL"). Wolfe also brings claim under the New York Labor Law, § 190 et seq. ("Labor Law"), for failure to pay her all wages owed.

3. Wolfe seeks injunctive and declaratory relief, compensatory, liquidated, and punitive damages, and all other appropriate equitable and legal relief pursuant to Title VII, the ADEA, NYSHRL, NYCHRL, and Labor Law.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over plaintiff's Title VII and ADEA claims pursuant to 28 U.S.C. § 1331, as those claims arise under federal law. This Court has supplemental jurisdiction over plaintiff's claims under the NYSHRL, NYCHRL, and Labor Law pursuant to 28 U.S.C. § 1367 because these claims closely relate to her Title VII and ADEA claims, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendant TBG resides in this District and plaintiff worked in this District, such that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PROCEDURE

6. Pursuant to Section 8-502(c) of the NYCHRL, plaintiff will cause to be served a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

7. On April 29, 2025, Wolfe filed a charge against TBG alleging unlawful sex and age discrimination and retaliation with the United States Equal Opportunity Employment Commission (the "EEOC").

8. At Wolfe's request, the EEOC issued a Notice of Right to Sue on November 14, 2025.

## PARTIES

9. Wolfe was an employee of TBG from January 2020 until the company unlawfully terminated her employment on March 19, 2025. Wolfe is a citizen of New York.

10. TBG is an executive search firm. Upon information and belief, TBG is incorporated in New York and is headquartered in New York.

11. Fanzo has, at all relevant times, been the Chief Executive Officer and President of TBG. Fanzo had authority to hire and fire employees of TBG and decide what wages to pay employees. Fanzo is a citizen of Connecticut.

12. Richard Bachrach is the founder and owner of TBG. Richard Bachrach had authority to hire and fire employees of TBG and decide what wages to pay employees. Richard Bachrach is a citizen of New York.

## FACTUAL ALLEGATIONS

### Background

13. Wolfe is 55 years old.

14. Wolfe worked for TBG from January 2020 until TBG fired her in March 2025. She primarily worked in TBG's New York City office.

15. Wolfe has a B.A. from Adelphi University. She also has paralegal certificates from Adelphi University and Hunter College and her real estate license.

16. Prior to joining TBG, Wolfe co-founded a communications company that she helped run for ten years and then was a Senior Recruiter at Trandon Associates for two years.

Employment with TBG

17. TBG hired Wolfe in January 2020 as a Senior Recruiter on the Real Estate team. After a couple of years, Wolfe became a Director of Real Estate. She ran a full circle Real Estate desk. She managed the recruiters on the team, did her own business development, account management, and recruiting, brought in new business, and maintained all client relationships.

18. Management's feedback on Wolfe's performance was always positive.

19. In summer 2024, Fanzo offered Wolfe the position of Director of Business Development on the sales team. He said that it was a promotion. Wolfe asked him if the promotion came with a raise. He said the promotion *was* the raise, but said that she could earn a lot more money in total compensation than she had as a Director of Real Estate. In a Teams chat, Fanzo said that it was a "no brainer" for Wolfe to accept the position.

20. In fact, the position was not a true promotion, and Wolfe's total compensation did not match Fanzo's promises.

21. Typically, when TBG promoted someone, Fanzo sent an email out to the entire company announcing the promotion. Fanzo did not make any announcement of Wolfe's supposed promotion.

22. In contrast to Wolfe's treatment, younger men were given real promotions, including to positions as her managers. Those who advanced were part of the boys' club.

23. One of the young men promoted was Wolfe's last manager, Brian McLaughlin, who was in his thirties. Another was Joe Ferrara, also in his thirties, who was promoted to take over the Real Estate team. Wolfe had told several managers, including Fanzo,

4

that she wanted the position to which Ferrara was promoted. Although several managers told Wolfe that TBG based promotions on tenure with the company, McLaughlin and Wolfe had been with TBG about the same length of time, and Ferrara had a shorter tenure with TBG than Wolfe.

24. Fanzo has also owned Jackson Lucas, a retained executive search firm that TBG refers to as a "sister" company, located in the same New York City office building as TBG. Wolfe understood that employees at Jackson Lucas had the opportunity to make more money than those at TBG. In or about 2023 and 2024, Wolfe asked a few TBG managers about the possibility of her moving to Jackson Lucas. She also raised the issue in team meetings. One of her direct managers told Wolfe that she was not the Jackson Lucas "type." Based on their hiring practices, Wolfe understood the comment to mean that she was too old.

25. In or about June 2024, an employee of Jackson Lucas invited a member of Wolfe's team who was in his twenties to attend a Jackson Lucas event at Chelsea Piers. Wolfe said that she was interested in attending, but the employee refused, saying the event was for "young people."

TBG's Hostile Work Environment

26. The men at TBG fostered a frat house atmosphere. Wolfe experienced sex-based harassment from several managers/executives.

27. Evan Price is a Vice President. Until January 2025, he was Wolfe's manager and the Vice President of Production.

28. At the TBG holiday party in December 2023, at one point Wolfe went to use the bathroom. Price followed her, and in the hallway outside the bathroom he grabbed her and started to kiss her. She pulled away.

29. Later that night, Price took a cab downtown to meet Wolfe at a bar. At the

5

time, Wolfe lived in downtown New York City. He later suggested coming to Wolfe's apartment and was disappointed when she said she was not inviting him home.

30. After that night, Price repeatedly made unwelcome sexual comments to Wolfe.

31. Price often made comments such as saying Wolfe looked "hot" or "sexy," or saying that he wanted a "thing" and would not regret anything, but he was married.

32. One day in 2024, Price introduced Wolfe to a new employee, a young man. Wolfe was wearing a rainbow colored sweater. When Price introduced Wolfe, he said that he could "lick her like a lollipop."

33. One day in 2024, Wolfe saw that Price had bought a large sub sandwich for his lunch. She asked him where he got it. He responded by miming performing fellatio on the sandwich.

34. Another time in winter 2024, a female co-worker commented on Wolfe's weight loss and said she looked good. Price interjected, "I'm only looking at her tits."

35. Given Price's position within TBG, despite his unwelcome conduct, Wolfe tried to maintain a good relationship with him.

36. On or about October 1, 2024, Wolfe had lunch with Price. She told him she was never going to have a relationship with him and that he should stop making comments to her. She had told him previously that his comments made her uncomfortable.

37. About a week later, the day after Wolfe had gone out on a date, Price asked her if she liked the man she had gone out with. Wolfe told Price that it was none of his business and she was not going to talk about it. Price asked why, and suggested it was because the sex wasn't good and the man she had the date with wasn't good enough for her. Price said maybe it

6

#1025536

should have been him. Price then said that if it was him, he would have "left [her] a couple of quarters" and said he could not afford her.

38.     One day in 2024, Price asked Wolfe if he should close the blinds in his office so that they could "fool around." She said no.

39.     In early 2024, not long after TBG promoted Ferrara to be Wolfe's supervisor, she was working with one of her best and biggest clients. The client was being difficult. Ferrara said to Wolfe, "You have a big dick, use your big dick and don't let the client speak to you that way."

40.     Wolfe went to high school with Richard Bachrach's two sons, Scott and Evan. Scott Bachrach works for TBG and Evan Bachrach works for an affiliated company called Cloud 9.

41.     Fanzo often made comments in front of other people or shouted in the office that Wolfe went to the prom with Scott Bachrach and they were dating. Fanzo also said to Wolfe, "you know you and Scott were a thing." None of that was true, and Scott Bachrach is married.

42.     Richard Bachrach has a house in the Hamptons. In summer 2024, he invited Wolfe over. Wolfe assumed his wife would also be there, and accepted the invitation. When Wolfe arrived, Richard Bachrach told her that his wife was in Florida. They were the only people there. After a while, he started to make sexual comments, which made Wolfe extremely uncomfortable.

43.     The following week, Fanzo said that he heard Wolfe had been with Richard Bachrach. She told him it was not a big deal. Fanzo pointed out that his wife had not been there. Later that day, while Wolfe was in Fanzo's office, he called Richard Bachrach. Fanzo said that it was too bad that Richard Bachrach's wife had not been there because they could have had a "threesome." Then Fanzo said he should patch Wolfe's ex-husband into the call and tell him about

7

it and watch the color of his hair drip down his face.

44. A couple of weeks later, Scott Bachrach asked Wolfe to visit the Long Island office. She did so. Richard Bachrach was there; he asked when Wolfe was leaving and if she could give him a ride to Southampton. Wolfe said that she could not because she was going out with friends. Richard Bachrach persisted, and Scott Bachrach told his father to just get an Uber.

45. Fanzo often was abusive toward Wolfe and called her insulting names, including in front of other people. Wolfe never observed Fanzo treat men in this manner.

46. Fanzo often referred to Wolfe's ex-husband, who runs a company that is a vendor of TBG, as he did after making the "threesome" comment above. He often said Wolfe's ex-husband made a lot of money and is "loaded," so that she did not need money. Fanzo also said, "Did you ever see a fat man without a fat wallet," in reference to himself and her ex-husband.

47. One day in or around March 2022, Wolfe was in Fanzo's office and noticed that he had a whip. When she asked about it, he insisted that he take pictures of her holding the whip. She did not think she could refuse, and let him take the pictures.

48. At an office Halloween party in 2024, Fanzo said that Wolfe looked like a dominatrix. He referred to the whip he kept in his office and said that he keeps the whip in his office to whip and give lashes to "the blacks."

49. That was not the only time that Fanzo openly made comments that were insulting to other races or religions.

50. For example, one year on Yom Kippur, Fanzo sent a group email to the entire company, saying that while some of them were in the office making "big" deals, others were atoning for their sins.

51. After TBG hired a man who was Orthodox Jewish, Fanzo introduced him

8

around the office as "the new rabbi."

52. In or about January or February 2025, on a call with Wolfe and a client, Fanzo complained that he was not going to be able to get Mexicans to do his landscaping anymore because of Donald Trump. The client was offended and stopped taking Wolfe's calls or responding to her emails after that.

53. McLaughlin often mocked Wolfe's age, such as frequently calling her "boomer," even though she is not old enough to be part of the baby boom generation. He also taunted her, claiming that she was not using the internal database, Bullhorn, the way he did, although she was using it properly. McLaughlin made other, similar derogatory comments about Wolfe frequently. Wolfe objected to McLaughlin when he made age-biased comments. On one occasion, Wolfe heard McLaughlin say to an employee who sat near them that he had called Wolfe "boomer" and that Wolfe was upset about it.

54. Fanzo, in a Teams chat, told Wolfe that she was a parent, and she needed to treat the recruiters like her kids. Wolfe never heard Fanzo tell male employees they needed to treat other employees like their kids.

55. Fanzo often engaged in inappropriate conversations with other men in the office on Teams chats.

Wolfe's Exclusion

56. Fanzo, McLaughlin, and other men in management often invited the men in the office to lunch, after-work drinks, or other events, but did not invite Wolfe.

57. March 12-13, 2025, there was a big industry event, New York Build Expo, at the Javits Center.

9

#1025536

58. Wolfe offered to show a new male employee on the Sales team around at the Expo. McLaughlin rejected her offer. Instead, he had other men attending accompany the new employee. McLaughlin also moved to sit next to the new employee and said Wolfe could not sit near him because he needed to learn from "the guys."

59. At the Expo, nine men from TBG went out to lunch together. Even though Wolfe was at the Expo, they did not invite her. They did invite the new, young male employee. Wolfe found out about the lunch when TBG posted a photo from the lunch, along with another photo of four of the men, promoting TBG's presence at the Expo. TBG did not mention, much less highlight, Wolfe's participation in the Expo.

### Wolfe Complains and TBG Retaliates

60. After Wolfe learned about the lunch, she complained to McLaughlin about being excluded at the Expo and said that he and the other men always excluded her. She said TBG was a boys' club and like a fraternity. McLaughlin responded, "Oh no, we are not."

61. About a week later, on March 19, 2025, Wolfe again complained to McLaughlin about being excluded at the Expo and elsewhere and again compared TBG to a boys' club and fraternity. McLaughlin did not respond.

62. Later that day, Wolfe was called into a meeting with Fanzo, McLaughlin, and two Human Resources ("HR") representatives. Fanzo asked if there was something Wolfe would like to tell him. She said there was something she was upset about that she would discuss with McLaughlin. Fanzo said they were not talking about the same thing. He claimed that two weeks earlier a client said Wolfe had sent the client her resume, that TBG had investigated, and they had found her resume on her computer.

63. In the March 19 meeting, Wolfe admitted that she had her resume on her computer. Numerous employees at TBG did as well. She also admitted that she had sometimes

10

sent her resume out. But she said she had never sent her resume to a client. Fanzo refused to tell her to which client he was referring.

64. In the March 19 meeting, Wolfe said that she had been harassed at TBG, that it was a boys' club and a fraternity. Neither Fanzo nor the HR representatives asked Wolfe what she was talking about.

65. In the March 19 meeting, Fanzo told Wolfe not to make a scene. He said he could have embarrassed her by firing her on the floor in front of everyone, but he did not do so out of deference to her ex-husband.

66. While Fanzo claimed that he was firing Wolfe for supposedly being disloyal, other TBG employees have left TBG, gone to work at competitors, and then been re-hired by Fanzo.

67. After the termination meeting, Cassandra Valencia, who worked in HR for TBG and one of its "sister" companies, gave Wolfe a separation agreement saying her position had been eliminated and offering her seven days' pay if she would sign a release. Although the agreement purported to waive Wolfe's claims under the ADEA, it did not comport with the requirements of the Older Workers Benefit Protection Act. Valencia told Wolfe that she was eligible for unemployment benefits.

68. Upon information and belief, Bachrach participated in the decision to terminate Wolfe's employment.

69. On March 28, 2025, Wolfe's counsel sent a letter by email to Fanzo, asserting claims on Wolfe's behalf of gender and age discrimination and retaliation.

70. On April 2, 2025, TBG submitted documentation to the New York Department of Labor, contesting Wolfe's receipt of unemployment benefits. Wolfe had to have a

hearing in order to have her benefits restored.

71. TBG usually paid commissions at the end of the month after commissions were earned. TBG never paid Wolfe the commissions she earned that she was owed after her employment was terminated.

<u>FIRST CAUSE OF ACTION</u>
Title VII: Gender Discrimination (Against TBG)

72. Plaintiff repeats and realleges paragraphs 1 through 71 as if fully set forth herein.

73. By the acts and practices described above, defendant TBG discriminated against plaintiff in the terms and conditions of her employment, including by creating a hostile work environment, on the basis of sex in violation of Title VII.

74. Defendant TBG's conduct showed reckless disregard for plaintiff's statutorily protected rights.

75. Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of defendant TBG's discriminatory practices unless and until this Court grants relief.

<u>SECOND CAUSE OF ACTION</u>
ADEA: Age Discrimination (Against TBG)

76. Plaintiff repeats and realleges paragraphs 1 through 75 as if fully set forth herein.

77. By the acts and practices described above, defendant TBG discriminated against plaintiff in the terms and conditions of her employment, including the creation of a hostile work environment, on the basis of age in violation of the ADEA.

78. Defendant TBG's conduct showed reckless disregard for plaintiff's statutorily protected rights. These violations were willful within the meaning of the ADEA.

79. Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of defendant TBG's discriminatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
NYSHRL: Discrimination (Against All Defendants)

80. Plaintiff repeats and realleges paragraphs 1 through 79 as if fully set forth herein.

81. By the acts and practices described above, defendants, in violation of the NYSHRL, discriminated against plaintiff on the basis of sex and age, including creating a hostile work environment. Defendants Bachrach and Fanzo are liable directly and as aiders and abettors.

82. Defendants acted with malice and/or reckless indifference to plaintiff's rights protected under NYSHRL.

83. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

## FOURTH CAUSE OF ACTION
NYCHRL: Discrimination (Against All Defendants)

84. Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

85. By the acts and practices described above, defendants, in violation of the NYCHRL, discriminated against plaintiff on the basis of sex and age, including creating a hostile work environment. Defendants Bachrach and Fanzo are liable directly and as aiders and abettors.

86. Defendants engaged in discrimination with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

87. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

### FIFTH CAUSE OF ACTION
### Title VII: Retaliation (Against TBG)

88. Plaintiff repeats and realleges paragraphs 1 through 87 as if fully set forth herein.

89. By the acts and practices described above, defendant TBG retaliated against plaintiff for her opposition to unlawful sex discrimination, including sexual harassment.

90. Defendant TBG's conduct showed reckless disregard for plaintiff's statutorily protected rights.

91. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant TBG's retaliatory practices.

### SIXTH CAUSE OF ACTION
### ADEA: Retaliation (Against TBG)

92. Plaintiff repeats and realleges paragraphs 1 through 91 as if fully set forth herein.

93. By the acts and practices described above, defendant TBG retaliated against plaintiff for her opposition to age discrimination, including age-based harassment.

#1025536

94. Defendant TBG's conduct showed reckless disregard for plaintiff's statutorily protected rights.

95. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant TBG's retaliatory practices.

## SEVENTH CAUSE OF ACTION
NYSHRL: Retaliation (Against All Defendants)

96. Plaintiff repeats and realleges paragraphs 1 through 95 as if fully set forth herein.

97. By the acts and practices described above, defendants retaliated against plaintiff for her opposition to conduct unlawful under the NYSHRL. Defendants Bachrach and Fanzo are liable directly and as aiders and abettors.

98. Defendants acted with malice and/or reckless indifference to plaintiff's rights protected under state law.

99. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' retaliatory practices.

## EIGHTH CAUSE OF ACTION
NYCHRL: Retaliation (Against All Defendants)

100. Plaintiff repeats and realleges paragraphs 1 through 99 as if fully set forth herein.

101. By the acts and practices described above, defendants retaliated against plaintiff for her opposition to conduct unlawful under the NYCHRL. Defendants Bachrach and Fanzo are liable directly and as aiders and abettors.

#1025536

102. Defendants engaged in discrimination with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

103. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' retaliatory practices.

## NINTH CAUSE OF ACTION
NY Labor Law (Against All Defendants)

104. Plaintiff repeats and realleges paragraphs 1 through 103 as if fully set forth herein.

105. Defendants failed to pay Wolfe all wages owed under its commission plan.

106. As a result of defendants' unlawful actions, plaintiff has suffered lost wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a) declaring the acts and practices complained of herein to be violations of Title VII, the ADEA, NYSHRL, NYCHRL, and Labor Law;

(b) enjoining and permanently restraining these violations of Title VII, the ADEA, NYSHRL, NYCHRL, and Labor Law;

(c) directing defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendants to place plaintiff in the position she would have occupied but for defendant's unlawful treatment of her, and making her whole for all earnings and other benefits

she would have received but for defendants' unlawful treatment, including but not limited to wages, including back pay and front pay, commissions, bonuses, and other lost benefits;

(e) directing defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, pain and suffering, and injury to professional standing and reputation;

(f) directing defendants to pay liquidated damages for its violations of the ADEA and Labor Law;

(g) directing defendants to pay plaintiff additional amounts as punitive damages;

(h) awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

(i) awarding plaintiff the costs of this action, together with reasonable attorneys' fees; and

(j) awarding such other and further relief as this Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       January 20, 2026

VLADECK, RASKIN & CLARK, P.C.

By:  */s Anne L. Clark*
     Anne L. Clark
     Attorneys for Plaintiff
     111 Broadway, Suite 1505
     New York, New York 10006
     (212) 403-7300

#1025536